IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

B & D MASONRY, INC.,

   Plaintiff,

v.

JAMES S. GREEN, SR., ESQ., AND
SEITZ, VAN OGTROP & GREEN, P.A.,

   Defendants.

CIVIL ACTION
NO. 12-3454



FILED

AUG 2 6 2013

MICHAEL E. KUNZ, Clerk
By_____Dep. Clerk

## OPINION

This matter is before the court on the Motion to Dismiss Plaintiff's Second Amended Complaint (in Part) Pursuant to Fed.R.Civ.P. 12(b)(6) filed by defendants on February 5, 2013 together with a Memorandum of Law in support. On February 7, 2013, Plaintiff's Response and Opposition to Defendants' Motion to Dismiss was filed together with Plaintiff's Brief in Response and Opposition to Defendants' Motion to Dismiss.

### I.  PROCEDURAL HISTORY

On May 18, 2012, Plaintiff B & D Masonry, Inc. ("B&D") filed a two-count Complaint in the Court of Common Pleas of Lancaster County, Pennsylvania. The Complaint asserted legal malpractice and breach of contract claims against defendants James S. Green, Sr., Esq., ("Green") and Seitz, Van Ogtrop & Green, P.A. ("the SVG firm"). Defendants removed this case from the Lancaster County Court of Common Pleas on June 18, 2012. On June 25, 2012, Defendants filed a partial motion to dismiss Plaintiff's initial Complaint.

By Order dated July 2, 2012, the Honorable James Knoll Gardner approved the parties' Agreed Stipulation and granted plaintiff leave to file an amended complaint and ordered withdrawn defendants' then-pending partial motion to dismiss without prejudice for defendants to re-file their motion if appropriate after plaintiff filed an amended complaint.

Plaintiff filed its Amended Complaint on July 19, 2012. Defendants filed a partial motion to dismiss the Amended Complaint on August 2, 2012. By Order dated December 20, 2013, Judge Gardner dismissed Plaintiff's Amended Complaint without prejudice to file a second amended complaint which properly establishes this court's jurisdiction.

Plaintiff filed its Second Amended Complaint on January 15, 2013. On February 5, 2013, Defendants filed the within Motion to Dismiss and supporting Memorandum, seeking partial dismissal of the Second Amended Complaint. Plaintiff's Response and Brief were filed together on February 7, 2013. On July 30, 2013, this case was reassigned from Judge Gardner to the undersigned.

## II. PLAINTIFF'S CLAIMS

Plaintiff's claims arise from Defendants' alleged failure to satisfy their professional duties as attorneys with respect to their representation of Plaintiff in an underlying suit against Triple H Construction, LLC ("Triple H").

Count I of the Second Amended Complaint alleges legal malpractice and professional negligence concerning Attorney Green's representation of B&D. Specifically, B&D alleges that Attorney Green's performance was deficient in the following respects: he failed to properly advise B&D, failed to respond to

2

communications, and failed to assert or preserve B&D's claim on a payment bond concerning a construction project. Plaintiff alleges that Defendants were not only negligent in their representation of B&D, but acted outrageously and with reckless indifference to Plaintiff's rights and interests.

Count II of the Second Amended Complaint alleges breach of contract with respect to Defendants' representation of Plaintiff. Specifically, B&D alleges that Defendants failed to render legal services in the manner required by the retainer agreement furnished by Attorney Green and signed by B&D.

### III. STANDARD OF REVIEW

A claim may be dismissed under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted." A Rule 12(b)(6) motion requires the court to examine the sufficiency of the complaint. Conley v. Gibson, 355 U.S. 41, 45, 78 S.Ct. 99, 102, 2 L.Ed.2d 80, 84 (1957) (abrogated in other respects by Bell Atlantic Corporation v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Generally, in ruling on a motion to dismiss, the court relies on the complaint, attached exhibits, and matters of public record, including other judicial proceedings. Sands v. McCormick, 502 F.3d 263, 268 (3d Cir. 2008).

Except as provided in Federal Rule of Civil Procedure 9, a complaint is sufficient if it complies with Rule 8(a)(2), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief". Rule 8(a)(2) does not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face. Twombly, 550 U.S. at 570, 127 S.Ct. at 1974, 167 L.Ed.2d at 949.[1]

---

[1] The Supreme Court's Opinion in Ashcroft v. Iqbal, 556 U.S. 662, 684, 129 S.Ct. 1937, 1953, 173 L.Ed.2d 868, 887 (2009), states clearly that the "facial plausibility" pleading standard set forth in

In determining whether a complaint is sufficient, the court must accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading, the plaintiff may be entitled to relief. Fowler, 578 F.3d at 210 (citing Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)).

Although "conclusory" or "bare-bones allegations" will not survive a motion to dismiss, Fowler, 578 F.3d at 210, a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits. Phillips, 515 F.3d at 231. Nonetheless, to survive a Rule 12(b)(6) motion, the complaint must provide "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." Id. at 234 (quoting Twombly, 550 U.S. at 556, 127 S.Ct. at 1965, 167 L.Ed.2d at 940) (internal quotations omitted).

The court is required to conduct a two-part analysis when considering a Rule 12(b)(6) motion. First, the factual matters averred in the complaint, and any attached exhibits, should be separated from legal conclusions asserted. Fowler, 578 F.3d at 210. Any facts pled must be taken as true, and any legal conclusions asserted may be disregarded. Id. at 210-211.

Second, the court must determine whether those factual matters averred are sufficient to show that the plaintiff has a "plausible claim for relief." Id. at 211 (quoting Iqbal, 556 U.S. at 679, 129 S.Ct. at 1950, 178 L.Ed.2d at 884).

---

Twombly applies to all civil suits in the federal courts. Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). This showing of facial plausibility then "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged", and that plaintiff is entitled to relief. Fowler, 578 F.3d at 210 (quoting Iqbal, 556 U.S. at 678, 129 S.Ct. at 1949, 173 L.Ed.2d at 884).

Ultimately, this two-part analysis is "context-specific" and requires the court to draw on "its judicial experience and common sense" to determine if the facts pled in the complaint have "nudged [plaintiff's] claims" over the line from "[merely] conceivable [or possible] to plausible." Iqbal, 556 U.S. at 679-680, 129 S.Ct. at 1949-1951, 178 L.Ed.2d at 884-885. A well-pled complaint may not be dismissed simply because "it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." Twombly, 550 U.S. at 556, 127 S.Ct. at 1965, 167 L.Ed.2d at 940-941 (internal quotations omitted).

## IV. FACTS

Based upon the well-pled averments in Plaintiff's Second Amended Complaint which I must accept as true, and the attached exhibits which I may consider under the above standard of review, the pertinent facts are as follows.

### A. The Parties

Plaintiff B&D Masonry, Inc., is a Pennsylvania corporation which does stone and masonry work. Its principal place of business is located at 1201 Marshall Avenue, Lancaster, Pennsylvania.[2] Defendant James S. Green, Sr., Esq., is an experienced construction attorney with whom B&D contracted to provide representation in a suit seeking payment for services rendered on a large construction project. Attorney Green is licensed in Pennsylvania, and practices law in both Pennsylvania and Delaware with the law-firm defendant, Seitz, Van Ogtrop & Green, P.A.[3] Defendant Seitz, Van Ogtrop &

---

[2] Second Amended Complaint, ¶¶ 1, 8.

[3] Id., ¶¶ 2-3, 31.

5

Green, P.A., is a Delaware corporation with its principal place of business at 222 Delaware Avenue, Suite 1500, Wilmington, Delaware.[4]

### B. The Project

Triple H Construction, LLC ("Triple H") and the Commonwealth of Pennsylvania, Department of General Services entered into a prime contract for Triple H to construct the Lincoln University International Cultural Center ("Lincoln University project").[5] Triple H obtained a contract bond from Arch Insurance Company to ensure payment for labor, materials and equipment on the Lincoln University project.[6]

On February 19, 2008, B&D entered into a subcontract agreement with Triple H for B&D to provide stone and masonry work for the Lincoln University project. The original subcontract amount was $2,340,000.[7] Additional change orders were approved, which amounted to $605,289.79. Accordingly, B&D was due $2,945,289.79 (the original subcontract price, plus the price of the approved change orders). Triple H paid B&D $2,739,102.95 of the $2,945,289.79 owed.[8]

Additionally, because of the costs of extra work Triple H required of B&D outside the subcontract, unresolved change order requests, and interferences with B&D's work resulting in additional labor, material and equipment costs, B&D lost $1,618,639.66 on the Lincoln University project.[9]

---

[4] Id., ¶ 4.

[5] Second Amended Complaint, ¶ 6.

[6] Id., ¶ 7, Exhibit B.

[7] Id., ¶ 8-9, Exhibit C.

[8] Id., ¶¶ 10, 13.

[9] Second Amended Complaint, ¶¶ 16-21.

### C. The Representation

On October 7, 2012, defendant Attorney Green, met with B&D to discuss issues, review documents and provide legal services regarding the Lincoln University project. The SVG firm sent a formal representation agreement to B&D's President, Craig Barnett, on February 24, 2010. Mr. Barnett signed the representation agreement on March 2, 2012. Defendants promised to represent B&D's legal and equitable interests and pursue recovery of damages related to the Lincoln University project.[10]

Attorney Green was aware that the Lincoln University project was bonded by a surety, Arch Insurance Company. Green requested a copy of the bond from Mr. Barnett by email on July 8, 2012. Mr. Barnett responded that he did not have a copy of the bond for the Lincoln University project, but that he did have a copy of the bond for the Boothwyn project (another project with Triple H). Attorney Green responded that Triple H likely used the same surety for both projects.[11]

At no time during his representation of B&D did Attorney Green obtain a copy of the bond for the Lincoln University project. Moreover, the Department of General Service is required to provide a copy of a payment bond when requested pursuant to Pennsylvania's right-to-know law. However, there is no record showing that defendants contacted the Commonwealth's Department of General Services or otherwise attempted to obtain a copy of the bond for the Lincoln University project.[12]

---

[10] Id., ¶¶ 2-4, 27, Exhibit D.

[11] Second Amended Complaint, ¶¶ 33-35, Exhibit E.

[12] Id., ¶¶ 36, 56-57.

On August 27, 2010, B&D requested Attorney Green to go "after [Triple H] as aggressively as possible." However, Attorney Green did not respond to that email. On September 9, 2010, Mr. Barnett re-forwarded the August 27, 2010 email to Attorney Green asking if he had received it. On September 16, 2012, Attorney Green responded that he had not forgotten about B&D, but had just finished three trials and was leaving on vacation and would contact B&D upon his return on September 17, 2010.[13]

On September 29, 2010 Keith Dussinger from B&D again contacted Attorney Green. Specifically regarding the Lincoln University project Mr. Dussinger stated, in pertinent part, "I cannot find [where] we only had 3 months to put a claim on their bond, in fact I did see where we could not go after their bond until after 3 months. We are still hoping this is a possibility, as it appears our position is strong." Attorney Green did not respond.[14]

On September 30, 2010 Mr. Barnett re-forwarded the September 29, 2010 email to Attorney Green asking if he had received it. Attorney Green responded that he had received the September 29, 2010 email and that he was working on two B&D lawsuits against Triple H. Nearly four months later, on January 24, 2011, Attorney Green sent an email to B&D saying, "I have tried to think of a way to include the bonding company, but given the timing I just don't think we have a claim."

On February 17, 2011 Attorney Green filed suit on behalf of B&D against Triple H, but did not file suit against Triple H's surety, Arch Insurance Company, on the

---

[13] Id., ¶¶ 37-39, Exhibit F.

[14] Second Amended Complaint, ¶ 40, Exhibit G.

payment bond.[15] Paragraph E of the payment bond states that recovery is subject to the Act of May 15, 1998, P.L. 358, No. 57, 62 Pa.C.S.A. §§ 101-4509, which does not require a subcontractor to provide written notice of a claim within three months.[16] Suit against a payment bond must be filed within one year of the date the secured project is completed.[17] Additionally, 90 days must pass between the last supply of labor or materials and the bringing of an action for payment.[18]

B&D was required to commence any action against the surety, Arch Insurance Company, within one year and 90 days after the completion of work. The last day of work on the Lincoln University project was August 29, 2009. The last day an action for payment could have been brought against the surety, Arch Insurance Company, on the payment bond was November 29, 2010.[19]

## V. DISCUSSION

Defendants seek to dismiss Plaintiff's request for attorneys' fees in the Second Amended Complaint. Defendants also seek to dismiss Plaintiff's request for punitive damages on the breach of contract claim

---

[15] Id., ¶¶ 43-44, Exhibit H.

[16] Second Amended Complaint, ¶ 45.

[17] Id., ¶ 48 (citing 42 Pa.C.S.A. § 5523(3)).

[18] Id., ¶ 46 (citing 62 Pa.C.S.A. § 903(d)(1)), and Exhibit B.

[19] Id., ¶ 49; Exhibit I. One year and ninety days after August 29, 2009 is Saturday, November 27, 2010. Because this deadline falls on a Saturday, the deadline becomes Monday, November 29, 2010. See Pa.R.Civ.P. 106.

## A. Attorneys' Fees

Defendants contend that Plaintiff's request for attorneys' fees in the Second Amended Complaint is improper because the bad faith justifying such an award must pertain to conduct in the within action.

Pursuant to the "American Rule" regarding attorney fees and costs, Pennsylvania generally requires that each party pays its own expenses unless there is "bad faith or vexatious conduct." Lucchino v. Commonwealth, 809 A.2d 264, 267 (Pa. 2002)(citing Tunison v. Commonwealth, 347 Pa. 76, 31 A.2d 521, 523 (1943)). "In Pennsylvania, the American Rule is embodied in 42 Pa.C.S.A. § 1726(a)(1), which provides that attorneys' fees are not an item of taxable costs except as permitted by 42 Pa.C.S.A. § 2503 (relating to right of participants to receive counsel fees)...." Mosaica Academy Charter School v. Dep't of Educ., 572 Pa. 191, 207, 813 A.2d 813, 822 (2002).

Under 42 Pa.C.S.A. § 2503, attorneys' fees may be awarded by the court if "conduct in commencing the action was 'arbitrary, vexatious, or in bad faith.'" Santilo v. Robinson, 383 Pa.Super. 604, 607, 557 A.2d 416, 417 (1989)(citing 42 Pa.C.S.A. § 2503(9); See Brenckle v. Arblaster, 320 Pa.Super. 87, 94, 466 A.2d 1075, 1078 (1983)).

Additionally, "the court may require an award of counsel fees if the party's conduct during the pendency of the matter is dilatory, obdurate or vexatious." In re Liscio, 432 Pa.Super. 440, 444, 638 A.2d 1019, 1021 (1994)(citing 42 Pa.C.S.A. § 2503(7)).

A party acts, "vexatiously if he filed the suit without sufficient grounds in either law or in fact and if the suit served the sole purpose of causing annoyance." Thunberg v. Strause, 545 Pa. 607, 615, 682 A.2d 295, 299 (1996)(citing Bucks County Bd. of

Supervisors v. Gonzales, 158 Pa.Commw. 664, 670-671, 632 A.2d 1353, 1356 (1993)). "Bad faith" conduct is motivated by "fraud, dishonesty, or corruption." Thunberg, 545 Pa. at 615, 682 A.2d at 299-300 (citing Frick v. McClelland, 384 Pa. 597, 600, 122 A.2d 43, 45 (1956)). Mere disapproval or disfavor of the defendant's actions is insufficient to support a claim for fees. Mosaica, 572 Pa. at 210, 813 A.2d at 824-825.

Additionally, the bad faith or vexatious conduct justifying an award of attorneys' fees must pertain to the current litigation. See, e.g., Lucchino, 809 A.2d at 271 (finding bad faith in bringing an appeal and therefore the award of fees was inappropriate); Cher-Rob, Inc. v. Art Monument Co., 406 Pa.Super. 330, 333, 594 A.2d 362, 364 (1991)(explaining that 42 Pa.C.S.A. § 2503(7) permits an award of fees for bad faith conduct that occurs after the lawsuit is initiated); 42 Pa.C.S.A. § 2503(9)(which entitles "[a]ny participant who is awarded counsel fees because the conduct of another party in commencing the matter or otherwise was arbitrary, vexatious or in bad faith" to receive such fees as part of taxable costs in the matter).

If bad faith is not demonstrated, there must be either a statutory authorization, agreement between the parties, or other established exception to award attorneys' fees. McMullen v. Kutz, 603 Pa. 602, 612-613, 985 A.2d 769, 775 (Pa. 2009).

Here, however, Plaintiff does not claim statutory authorization, nor is there such a contractual provision in the retainer agreement. Accordingly, Plaintiff's request for attorneys' fees must rest upon bad faith conduct by defendants. See id.

To establish bad faith on the part of Defendants, Plaintiff relies upon its allegations concerning Defendants' failure to answer questions, to provide accurate and

appropriate legal advice, and to assert or otherwise preserve Plaintiff's claim against the payment bond.[20]

Specifically B&D alleges the following as the basis for bad faith:

> 84. As experienced construction attorneys, Defendants were not only negligent, but they were also outrageous – recklessly indifferent to the interests of their client, B&D, by, among other things:
>
>> a. ignoring B&D's claims for months;
>>
>> b. ignoring questions from B&D regarding the requirements and limitations period for the timing of a claim on the Payment Bond;
>>
>> c. failing to even obtain a copy of the Payment Bond;
>>
>> d. providing legal advice concerning B&D's rights under the Payment Bond without reviewing a copy of the Payment Bond or the applicable statutes; and
>>
>> e. failing to determine and advise B&D of the limitations period for making a claim on the Payment Bond.
>
> 85. Moreover, on January 24, 2011, Green wrote to B&D that B&D could not pursue a claim against Arch Insurance Company or the Payment Bond, but Green did not disclose that Defendants were responsible for missing the limitations period deadline, despite having nearly fourteen (14) months to commence an action against Arch Insurance Company.
>
> 86. As a result, Defendants not only acted with reckless indifference to the interests of their client, B&D, but the Defendants also acted in bad faith.[21]

The above allegations represent the heart of Plaintiff's malpractice and breach of contract claims against Defendants. However, there are no allegations of bad faith conduct by Attorney Green or the SVG firm toward B&D during the initiation and

---

[20] Second Amended Complaint, ¶¶ 78-84, 98-103.
[21] Second Amended Complaint, ¶¶ 84-86, 103-105.

12

prosecution of the within action. Plaintiff has alleged no action on the part of Defendants in the instant case that can be categorized as bad faith or vexatious. Rather, any allegations that could conceivably permit a finding of bad faith conduct by Defendants pertain to Defendants' acts or omissions in representing B&D in its prior litigation against Triple H.

Plaintiff cites Foster v. Duggin, 695 S.W.2d 526, 527 (Tenn. 1985), and Winter v. Brown, 365 A.2d 381, 386 (D.C. 1976), in support of its contention that attorneys' fees should be awarded as part of damages.[22] However, while the above allegations may be appropriate in determining the cost of litigation as part of damages stemming from legal malpractice, they do not support the request for "attorneys' fees" in this motion. Indeed, the Foster case cited by Plaintiff explicitly states that the cost of securing an attorney for the legal malpractice litigation is not a basis for the award of "attorneys' fees" but rather is a basis for incidental damages stemming from the breach of contract. Foster, 695 S.W.2d at 527.

The United States Court of Appeals for the Third Circuit has similarly stated that attorney fees are "an item of damages in a legal malpractice claim." Post v. St. Paul's Traveler's Insurance, 691 F.3d 500, 520-21 (3d Cir. 2012)(citing Bailey v. Tucker, 533 Pa. 237, 251-52, 621 A.2d 108, 115 (1993)(explaining that when an attorney agrees to render services for a fee, and that contract is breached, the fees paid by the client are recoverable as damages); Feld and Sons, Inc. v. Pechner, Dorfman, Wolfee, Rounick, and Cabot, 312 Pa.Super. 125, 141, 458 A.2d 545, 554 (1983)(stating that "the lawyer may not keep money gotten from the client in violation of the lawyer's professional

---

[22] Plaintiff's Brief in Response at page 11.

obligations"); see also 3 Ronald E. Mallen & Jeffrey M. Smith, LEGAL MALPRACTICE § 21.6, at 22-26 (2009)).[23]

Therefore, while Plaintiff's request for attorney fees incurred in prosecuting the within action is not supported by any demonstrated bad faith or vexatious conduct during this legal malpractice and breach of contract action, the attorney fees and costs incurred by Plaintiff in the underlying representation by Defendants may ultimately be considered as part of Plaintiff's damages in the within matter.

Accordingly, Plaintiff's request for attorneys' fees in the Second Amended Complaint are dismissed. Of course, Plaintiff's request for the disgorgement of all fees paid by Plaintiff to Defendants in connection with Defendants' representation of Plaintiffs remains in this suit.[24]

### B. Punitive Damages

Defendants argue that conduct must be intentional to support a punitive damages award.[25] According to defendants, even severely negligent conduct is insufficient to provide a basis for punitive damages. Plaintiff contends that punitive damages are appropriate because of defendants' "outrageous — recklessly indifferent" conduct which allegedly constitutes legal malpractice.[26]

Pennsylvania has adopted the Restatement (Second) of Torts § 908 for punitive damages. Medvecz v. Choi, 569 F.2d 1221, 1226 (3rd Cir. 1977); Bangert v. Harris,

---

[23] Similarly, Pennsylvania Superior Court Judge Joseph A. Del Sole noted that a plaintiff's award in a legal malpractice suit is not reduced by what the defendant-lawyer would have collected in fees because additional fees are required from plaintiff to pursue the legal malpractice action. Kituskie v. Corbman, 452 Pa.Super. 467, 478, 682 A.2d 378, 383 (1996) (Del Sole, J., concurring), aff'd 552 Pa. 275, 714 A.2d 1027 (1998).

[24] See Second Amended Complaint at pages 12-13, ¶ (b); and page 16, ¶ (b).

[25] Defendants' Memorandum at page 6.

[26] Plaintiff's Brief at page 7.

553 F.Supp. 235, 239 (M.D.Pa. 1982); Rizzo v. Haines, 520 Pa. 484, 507, 555 A.2d 58, 69 (1989).

Section 908(2) states that "[p]unitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others." Restatement (Second) of Torts §908(2). "A court may award punitive damages only if the conduct was malicious, wanton, reckless, willful, or oppressive." Rizzo, 520 Pa. at 507, 555 A.2d at 69 (citing Chambers v. Montgomery, 411 Pa. 339, 344-45, 192 A.2d 355, 358 (1963)). Furthermore, "[t]he state of mind of the actor is vital. The act...must be intentional, reckless or malicious." Id., (citing Feld v. Merriam, 506 Pa. 383, 396, 485 A.2d 742, 748 (1984)).

Appropriate inquiry encompasses "the act itself together with all the circumstances including the motive of the wrongdoers and the relations between the parties...." Fulton v. Gavlick, 63 Pa.D.&C.4th 250, 262 (Ct.Com.Pl., Berks County 2003) (citing Feld, 506 Pa. at 395, 485 A.2d at 748). Section 908 (2) of the Restatement (Second) of Torts specifically states that punitive damages may be awarded for "acts done with a bad motive or with a reckless indifference to the interests of others." The Supreme Court of Pennsylvania has recognized punitive damages when the acts are, "intentional, reckless, or malicious." Feld, 506 Pa. at 396, 485 A.2d at 748. Therefore, punitive damages may be considered for conduct that is either intentional or reckless.

Defendants cite Rizzo, 520 Pa. at 507, 555 A.2d at 69, and In re Tigue, 82 B.R. 724 (Bankr.E.D.Pa. 1989) as examples of circumstances where punitive damages are appropriate. Defendants argue that Rizzo and In re Tigue establish a minimum level of

conduct necessary for punitive damages.[27] In Rizzo, the defendant-attorney convinced the client to "gift" him $50,000 that the court had awarded the client as a result of the defendant's misconduct. Rizzo, 520 Pa. at 507, 555 A.2d at 69. The court found such conduct to be "more than sufficient" to uphold an award of punitive damages. Rizzo, 520 Pa. at 508, 555 A.2d at 69.

In the case of In re Tigue, the defendant-attorney obtained title to the client's home through misrepresentations and court-approved assignment of title of which the client had no notice. In re Tigue, 82 B.R. at 726.

The appellate decisions in both Rizzo and In re Tigue upheld summary judgments in favor of the plaintiff and affirmed the award of punitive damages. Rizzo, 520 Pa. at 507, 555 A.2d at 69; In re Tigue, 82 B.R. 724, n.3 (Bankr.E.D.Pa. 1989). In other words, the courts held that the circumstances were sufficient for the award of punitive damages, not that those circumstances were the minimum level of conduct which would support an award of punitive damages.

In Bangert, the district court considered the appropriateness of dismissing a claim for punitive damages in response to a Rule 12(b)(6) motion to dismiss and concluded that "[b]ecause the determination on whether to submit consideration of such damages to the jury is for the court...we cannot now determine this matter." Bangert, 553 F. Supp. at 239 (citing Focht v. Rabada, 217 Pa. Super. 35, 38, 268 A.2d 157, 159 (1970)). Furthermore, the court explained that the plaintiff's claims would be re-examined at the time of trial, "but at the present time, defendants' motions to dismiss the exemplary damages claims therein must be denied." Id.

---

[27] Defendants' Memorandum at page 6.

Defendants contend that the conduct alleged in the instant case does not approach evil motive or reckless indifference present in Rizzo and In re Tigue. While mere negligence is not enough to allow consideration of punitive damages, Plaintiff needs only allege facts that indicate reckless indifference to the rights of another.

Here, Plaintiff states that Defendants did not respond to multiple communications from Plaintiff and ignored Plaintiff's claims for months.[28] Furthermore, Plaintiff alleges that Defendants failed to sufficiently research, and properly advise on, the statute of limitations for a claim on the payment bond, even after specific questions from Plaintiff.[29] Specifically, Plaintiff alleges that Defendants had fourteen months from initial communication and nine months from the signing of the retainer agreement in which to assert or preserve the payment bond claim.[30]

Read in the light most favorable to Plaintiff, I conclude that Plaintiff's Second Amended Complaint alleges sufficient facts to establish a plausible claim of reckless indifference on the part of Defendants. Accordingly, I will deny Defendants' motion to dismiss or strike plaintiff's request for punitive damages on its legal malpractice claim.

## VI. CONCLUSION

For the foregoing reasons, I grant in part, and deny in part, Defendants' Motion to Dismiss. Specifically, I grant the motion to the extent it seeks to dismiss Plaintiff's claim for attorneys' fees incurred in commencing and prosecuting the within legal malpractice and breach of contract action because Plaintiff has not demonstrated any bad faith or

---

[28] Second Amended Complaint, ¶ 84.

[29] Id., ¶¶ 78-86.

[30] Id., ¶ 55.

vexatious conduct by Defendants thus far in the within federal matter. I deny the Defendant's Motion to Dismiss in all other respects.

BY THE COURT:

_____
Jeffrey L. Schmehl, J.